REGAN, Judge.
The plaintiff, Augustus G. Williams, the vendee of the real estate which provoked this litigation, prays for a writ of mandamus to compel the defendants, Rufus W. Fontenot, Collector of Revenue for the State of Louisiana, and Francis J. Dem-arest, Sr., the Recorder of Mortgages for the Parish of Orleans to cancel and erase from the records of the Mortgage Office the inscription of a judgment for corporation franchise taxes in favor of the State of Louisiana and against the W. E. T. Realty Company, Inc., the vendor from whom plaintiff individually acquired the property.
Defendants answered and, in substance, asserted that the plaintiff is not entitled to a cancellation of the inscription of the judgment for the reason that he had intimate knowledge of the suit by the State against the W. E. T. Realty Company, Inc., since the record in that suit[1] discloses that the plaintiff was attorney for and Vice President of that Corporation and, as an officer thereof was personally served with citation, therefore, he was thoroughly acquainted in both capacities with the pleadings and the full effect of the judgment rendered therein; that the act of sale from the W. E. T. Realty Company, Inc., to him individually purportedly passed on January 3, 1949, but not registered in the Conveyance Office until February 14, 1949[2], the same date as the judgment resulting from the above suit was recorded in the mortgage office[3] was simply a simulated sale, — a surreptitious attempt to place this property beyond the reach of the judicial mortgage which had been legally acquired by the State, and, therefore, the registration of the sale should be treated as though it had never existed.
From a judgment in favor of the defendants dismissing plaintiff’s suit he has prosecuted this appeal.
The general chronological facts are relatively undisputed and the details thereof are significant to emphasize the character of the case. The record reveals that on December 8, 1948, the Collector of Revenue for the State of Louisiana, brought suit against the W. E. T. Realty Company, Inc. for corporation franchise taxes for the years 1945 and 1946 in the amount of $758.03 and the suit was served on the Vice President of that corporation, Augustus G. Williams; the corporation filed four distinct pleadings to this suit and, in each instance, the names of Augustus G. Williams and Delvaille H. Theard appeared as co-counsel of record. The case was tried and, on February 11, 1949, judgment was rendered and signed in favor of the Collector of Revenue as prayed for and no appeal was perfected therefrom. On February 14, 1949 at 11:30 a. m. the Collector of Revenue for the State of Louisiana recorded its judgment of February 11, 1949[4] in the Mortgage Office. In the process of recordation the clerk omitted the amount[5] of the judgment and simply inscribed therein “that there be judgment * * * in favor of W. A. Cooper, Collector of Revenue of the State of Louisiana condemning * * * W. E. T. Realty Company, Inc., to pay to (Collector of Revenue) corporation franchise tax, penalty and interest on attorney’s fees and all costs, and that the lien and privilege of the State be recognized and enforced according to law.”
*702 The record further reveals that on January 3, 1949, by act before Frank P. Krieger, Notary Public, the real estate which is the subject of this mandamus suit was allegedly sold by the W. E. T. Realty Company, Inc. to Augustus G. Williams, its attorney and Vice President, but it was not until February 14, 1949, or forty-two days thereafter that this act of sale was registered in the Conveyance Office, which was the same day that the Collector of Revenue recorded the State’s judgment in the Mortgage Office.[6]
The fundamental question posed for our consideration is whether the sale from the W. E. T. Realty Company, Inc. to Williams was simulated?
The whole tenor of the record leads us to the inevitable conclusion that the sale from the W. E. T. corporation to Williams was simulated — a surreptitious attempt to place this property beyond the reach of the judicial mortgage which had been legally acquired by the State. The record establishes beyond a shadow of a doubt that when the State sued the W. E. T. corporation for corporate franchise taxes Williams was its attorney and Vice President and throughout those proceedings he was intimately acquainted with both the pleadings and the full effect of the judgment which was rendered therein on February 11, 1949; he knew that it would subsequently be recorded and, thereafter operate as a judicial mortgage against the property of the W. E. T. corporation; it was shortly thereafter, or on February 14, 1949, that his notary registered a purported sale, dated January 3, 1949, which was forty-two days after Williams had acquired the property from the W. E. T. Realty Company, Inc. Williams, in endeavoring to explain the unusual delay of forty-two days in registering the act or until the very day on which the Collector of Revenue recorded his judgment, asserted “I think it was just an oversight on (Frank P.) Krieger’s part.”
The record further reveals that this property was purportedly acquired by Williams from the W. E. T. corporation in the year of 1949 without the payment of any consideration other than the assumption of the existing mortgage, which significantly was approximately $800 less than the original mortgage given by the W. E. T. corporation to the Union Savings & Loan Association in the year of 1944 on this piece of property.
We are fully cognizant of the fact that sales are often consummated in this manner and they are legal and valid provided, of course, the environmental characteristics of the transaction reflects good faith, however, even though we figuratively used the lighted lantern of Diogenes, we have failed to find any evidence thereof in this transaction; on the contrary, we recognize an abortive effort to defeat the state’s judgment for corporate franchise taxes.
In Reeves v. Felder, La.App.1942, 6 So. 2d 688, 691, the court in holding that the sale was simulated observed:
“Another circumstance which, in our opinion, reflects on the integrity of the sale, arises from the fact that it was more than six months after it had been executed that the deed was filed for record in the Conveyance Office of the Parish. That, to say the least, was a bit unusual and the defendant has not given a very satisfactory explanation of that long delay.”
In Rogers v. Brown, La.App.1943, 12 So.2d 68, 70, the court in passing on a similar situation asserted:
*703 “It appears to us that the purported sale to him was not confected in good faith. The written act of sale of October 27th, 1941, was executed with knowledge that a writ of provisional seizure had been ordered and executed, save on the automobile in question. It appears to us that the parties in interest expected the said automobile to be provisionally seized, and to circumvent seizure, the cash deed was executed.”
In Houghton v. Houghton, 1928, 165 La. 1019, 116 So. 493, 495, the court said:
“A simulation is a feigned, pretended act; one which assumes the appearance without the reality. Being entirely without effect, it is held not to have existed, and, for that reason, it may be disregarded or attacked collaterally by any interested person.”
Assuming arguendo that the sale was not simulated, a view which plaintiff believes to be most favorable to his case, we are then of the opinion that the judgment of the State, which was recorded in the Mortgage Office at 11:30 a. m. February 14, 1949, was prior to the registration of the act of sale in the Conveyance Office, although they both occurred on the same day, for the reason that plaintiff, in alleging prior registration on the same day, caused time to become the essence of the conflict and, therefore, the burden was upon him, or his notary, who possessed that knowledge, to prove time of registration of the act and although they were offered the opportunity they failed to do so.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. No. 286937 of the docket of the Civil District Court for the Parish of Orleans.

. Forty-two days after the purported acquisition of the property.

. Recorded in Mortgage Office February 14, 1949 at 11:30 a. m.

. LSA-R.S. 13:5033 provides in part that “all judgments sustaining any such claim shall be rendered and signed on the same day, and shall become final and executory on the fifth calendar day after renditiou.”

.Plaintiff’s counsel insists that this omission of the amount invalidated the judicial mortgage, and cites principally in support thereof Lirette v. Carrane, 1865, 27 La.Ann. 298.

. Plaintiff contends that even if the State’s judgment was properly recorded it cannot operate as a judicial mortgage upon the property of plaintiff for the reason that the Stale's judgment became a judicial mortgage on February 14, 1949 at 11:30 a. m., LSA-C.O. art. 3322, whereas plaintiff’s act of purchase was effective for the whole day of February 14; 1949, LSA-C.C. art. 2262.